No. 13-3564

# In the United States Court of Appeals for the Third Circuit

LUIS VEGA

Plaintiff,

**vs.**

GEORGE RIPLEY, individually and in his capacity as a police officer for York City Police Department, CITY OF YORK, CITY OF YORK POLICE DEPARTMENT, and John Does 1-10

Defendants.

Appeal Of Luis Vega

Appeal from the Order of the United States District Court for the Middle District of Pennsylvania by the Honorable Christopher C. Conner, in Civil Action No. 1:11-cv-2015

**Brief of Defendant, Detective George Ripley**

Walter F. Kawalec, III, Esquire
**Marshall, Dennehey, Warner, Coleman & Goggin**
200 Lake Drive East
Suite 300
Cherry Hill, New Jersey 08002
(856) 414-6024
*Attorneys for Appellee*
*Detective George Ripley*

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES .................................................................. ii

II.   STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ......................1

III.  STATEMENT OF THE CASE ........................................................2

IV.   FACTS RELEVANT TO THE ISSUES SUBMITTED FOR REVIEW .........3

V.    SUMMARY OF THE ARGUMENT ...............................................10

VI.   ARGUMENT .........................................................................11

   A.   QUALIFIED IMMUNITY BARS THE PLAINTIFF'S CLAIM...............11

      1) The Plaintiff Cannot Demonstrate Malicious Prosecution .........................14

      2) The Plaintiff Cannot Establish That Detective Ripley Initiated Criminal Proceedings ....................................................15

      3) The Plaintiff Could Not Establish An Absence of Probable Cause To Arrest Him. ....................................................16

      4) The Plaintiff Could Not Demonstrate That Detective Ripley Acted Maliciously In The Handling Of The Investigation ......................................21

      5) The Plaintiff Has Not Establish That There Was Anything Erroneous In The Manner The Photographic Array Was Presented. ...................................23

      6) The Plaintiff Failed To Demonstrate Any Material Information Was Omitted From The Probable Cause Affidavit. ................................................26

VII.  CONCLUSION .......................................................................34

VIII. CERTIFICATION OF BAR MEMBERSHIP ............................................. iv

IX.   CERTIFICATE OF COMPLIANCE  WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, TYPE STYLE, AND ELECTRONIC FILING REQUIREMENTS............................................v

CERTIFICATE OF SERVICE ................................................................. vi

## TABLE OF AUTHORITIES

**Cases**

Albright v. Oliver, 510 U.S. 266 (1994)....................................................21

Anderson v. Creighton, 483 U.S. 635 (1987) .........................................12

Atterbury v. City of Miami Police Dep't., 322 F. Appx. 724 (11th Cir. 2005).......19

Barna v. City of Perth Amboy, 42 F.3d 809 (3d Cir. 1994) ....................18

Beck v. Ohio, 379 U.S. 89 (1964)..........................................................17

Camiolo v. State Farm, 334 F.3d 345 (3d Cir. 2003) ..............................16

Curley v. Village of Suffern, 268 F.3d 65 (2d Cir. 2001) ........................20

Donahue v. Gavin, 80 F.3d 371 (3d Cir. 2002) ......................................12

Feldman v. Cmty. College of Allegheny, 85 Fed. Appx. 821 (3d Cir. 2004) .........18

Garcia v. County of Bucks, 155 F. Supp.2d 259 (E.D. Pa. 2001)...........21

Good v. Dauphin County Social Services for Children and Youths, 891 F.2d 1087
(3d Cir. 1989)........................................................................................14

Greene v. City of Philadelphia, 1998 U.S.Dist. LEXIS 6594 (E.D.Pa. 1998) ........24

Harlow v. Fitzgerald, 457 U.S. 800 (1982) ...................................... 11, 12

Henderson v. City of Philadelphia, 853 F.Supp.2d 514 (E.D.Pa. 2012) .................15

Hunter v. Bryant, 502 U.S. 224 (1991)...................................................12

Jarrett v. Headley, 802 F.2d 34 (2d Cir. 1986) ......................................24

Johnson v. Knorr, 477 F.3d 75 (3d Cir. 2007) .......................................15

Lassiter v. Alabama A&M Univ., 28 F.3d 1146 (11th Cir.1994) ...........13

Lee v. Mihalich, 847 F.2d 66 (3d Cir. 1988) ................................. 3, 4, 21

Malley v. Briggs, 475 U.S. 335 (1986)...................................................12

Matasavage v. Corby, 2000 U.S. Dist. LEXIS 20207 (M.D. Pa. October 16, 2006)
................................................................................. 26, 29, 30

McKenna v. City of Phila., 582 F.3d 447 (3d Cir. 2009) .......................15

Merkle v. Upper Dublin, 211 F.3d 782 (3d Cir. 2000).............. 18, 19, 31

Mitchell v. Obenski, 134 Fed. Appx. 548 (3d Cir. 2005).......................18

Monell v. Department of Social Services, 436 U.S. 658 (1978) ..............2

Moscoso v. City of New York, 92 F. Supp. 2d 310 (S.D.N.Y. 2000).....................20

Orsatti v. N.J. State Police, 71 F.3d 480 (3d Cir. 1995) ...........................17

Pace v. Capobianco, 283 F.3d 1275 (11th Cir. 2002).................................13

Pardue v. Gray, 136 Fed. Appx. 529 (3d Cir. 2005)..................................18

Phillips v. Allen, 668 F.3d 912 (7th Cir. 2012) ....................................19

Reed v. City of Chicago, 77 F.3d 1049 (7th Cir. 1996) .............................15

Saucier v. Katz, 533 U.S. 191 (2001) ........................................ 12, 13, 14

Sharrar v. Felsing, 128 F.3d 810 (3d Cir. 1997)....................................28

Trabal v. Wells Fargo, 269 F.3d 243 (3d Cir. 2001) ................................16

United States v. Bautista, 23 F.3d 726 (2d Cir. 1994)..............................25

United States v. Brudeau, 168 F.3d 352 (9th Cir. 1999) ...........................25

United States v. Cruz, 910 F.2d 1072 (3d Cir. 1990) ..............................17

United States v. Emanuele, 51 F.3d 1123 (3d Cir. 1995)............................24

United States v. Jacobs, 986 F.2d 1231 (8th Cir. 1993) ...........................27

United States v. Lawrence, 349 F.3d 109 (3d Cir. 2003) ...........................25

United States v. Starusko, 729 F.2d 256 (3d Cir. 1984)............................31

Wilson v. Russo, 212 F.3d 781 (3d Cir. 2000)........................ 12, 17, 18, 27, 32, 33

Wright v. City of Phila., 409 F.3d 595 (3d Cir. 2005).................... 5, 17, 18, 29, 30

Wychunas v. O'Toole, 252 F.Supp.2d 135 (M.D. Pa. 2003) ................................17

**Statutes**

42 U.S.C. § 1983 ............................................................... 2, 11, 12

**Other Authorities**

Fed. R. App. P. 32 (a)(7)(B) ......................................................v

Fed. R. App. P. 32(a)(6)...........................................................v

Fed. R. App. P. 32(a)(7)(B)(iii) ..................................................v

Third Circuit LAR 31(b) & (c) .....................................................v

Third Circuit LAR 46.1(e) ........................................................ iv

## II.     STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1)      Whether Detective Ripley may be liable for malicious prosecution where he relied upon the victim's identification of the plaintiff as the man who shot him, where he was not in possession of any clearly exculpatory information, and where the identification process through which the plaintiff was identified was not unduly suggestive or otherwise improper.

*Suggested Answer: No.*

### III.    STATEMENT OF THE CASE

This case stems from a complaint filed by the plaintiff, Luis Vega, on

October 28, 2011, in which he alleged a claim under 42 U.S.C. § 1983 against the

defendant, Detective George Ripley of the City of York, Pennsylvania, Police

Department, for malicious prosecution, allegedly in violation of his rights under

the Fourth and Fourteenth Amendments. (App. 40a-55a) The complaint also

contained a claim under Monell v. Department of Social Services, 436 U.S. 658

(1978) against the City of York, but that claim was abandoned by the plaintiff and

this appeal is proceeding solely on the malicious prosecution claim. (Id.; Plaintiff's

brief at 5, n1)

On July 18, 2012, at the end of discovery, the defendants filed their motion

for summary judgment, arguing that Detective Ripley was entitled to dismissal of

the malicious prosecution claim on the grounds of qualified immunity and because

the plaintiff could not demonstrate a prima facie claim for malicious prosecution as

a matter of law.  (App. 63a-396a)

On May 15, 2013, Magistrate Judge Martin C. Carlson issued a

comprehensive, thirty-five page Report and Recommendation, finding that the

defendant was entitled to qualified immunity and holding that the defendant "could

reasonably rely on the eyewitness photo line-up identification to conclude that

probable cause existed [to arrest the plaintiff], and that his actions are therefore

cloaked with qualified immunity." (App. 5a-39a) Moreover, Magistrate Judge

Carlson held that the plaintiff could not establish that Detective Ripley initiated

criminal proceedings against plaintiff; could not demonstrate an absence of

probable cause to arrest plaintiff; and could not show that Detective Ripley acted

with malice toward the plaintiff. (Id.)

On July 1, 2013, the plaintiff filed his objection to the Report and

Recommendation with the Honorable Christopher C. Conner, U.S.D.J. (App. 577a-

596a) Judge Conner rejected the plaintiff's position and adopted Magistrate Judge

Carlson's Report and Recommendation, dismissing the plaintiff's case with

prejudice. (App. 3a-4a)

This appeal followed. (App. 1a-2a)

## IV.    FACTS RELEVANT TO THE ISSUES SUBMITTED FOR REVIEW

On September 30, 2009, Clarence Collier, Jr. was shot as he was entering his

apartment at 675 E. Market Street, near the intersection of Market and Lee Streets

in York, Pennsylvania. (App. 177a) As a result of being shot, Mr. Collier was

paralyzed from the neck down. (App. 131a)

The defendant, Detective Ripley, responded to investigate the shooting but

by the time he arrived on the scene, Mr. Collier had already been taken to the

hospital. (App. 94a) Upon his arrival, Detective Ripley took a position in the street,

did a 360-degree visual canvas of the area and then approached Lt. Gene Fells,

who was standing at the intersection guarding three expended nine millimeter shell casings. (App. 93a-94a)

Detective Ripley started his initial investigation by speaking with two of the officers who first responded, Sergeant Nicholas Figge and Officer Michael Meeker, as well as to Mr. Collier's girlfriend, Maribel Baez, and Ms. Baez's uncle, Hannibal Flores. Baez and Flores were witnesses to the incidents leading up to the shooting, and to the shooting itself. (App. 95a-96a)

Ms. Baez described the argument which preceded the shooting, between Clarence Collier and several females during which girls threatened Ms. Baez and, in turn, Clarence Collier threatened the girls with a shotgun. (App. 97a) Mr. Collier chased the girls into several stores with the gun before finally retreating on the advice of a neighborhood store owner. (App. 181a) As he retreated to his apartment, he was shot.  (App. 97a-99a)

Mr. Flores provided the description of a light-skinned, biracial male, wearing a brown or black hoodie and a pair of jeans, whom he saw leaving the intersection after the shots were fired, heading southbound on Lee Street. (App. 100a; 163a) Mr. Flores observed this male only moments after the shooting and, based on this information, Detective Ripley believed that this was the only other individual present, and was likely the shooter. (App. 100a)

Detective Ripley interviewed four of the females involved in the incident and each presented a similar description of the events leading up to the shooting. (App. 112a-113a; 183a) However, none were able to identify the shooter. (Id.)

Shortly thereafter, Detective Ripley received information from Detective Scott Nadzom that an informant had provided Nadzom with information that the plaintiff, Luis Vega, was bragging about shooting a boy "out east." (App. 117a-118a) The informant noted that the Vega drove a white Chevrolet Tahoe; had a sister that lived in nearby Columbia, Pennsylvania; was about 23 years old and formerly lived on the 300 block of West Gay Street in York.  (Id.) Detective Ripley met with the informant, Ms. Penny Wright, and she related to him substantially the same information that she relayed to Detective Nadzom, and she noted that Vega did not brag to her directly but rather did so to one or more of her teenage sons, who related the information to her. (Id.) She further stated that she did not have any hard feelings or any "axe to grind" against Mr. Vega. (App. 119a)

Detective Ripley found Ms. Wright to be a reliable witness because she had previously provided information to Detective Nadzom which led to various drug seizures, arrests, and convictions. (App. 119a-122a) Further, Detective Ripley confirmed the information provided by Ms. Wright regarding Vega's residential history, the car he drove, and the his sister's residence, all of which bolstered her credibility in his eyes. (App. 123a-124a)

Detective Ripley next determined that the plaintiff had two firearms registered to him, although neither a nine millimeter, and that his license to carry those weapons had been revoked or suspended by another county. (App. 124a)

Around this time, Detective Ripley spoke to Ms. Baez who said she had had a conversation with Clarence Collier and that he told her that he knew the shooter was someone named Luis, and that Luis had a sister who lived in Columbia. (App. 127a-128a)

Detective Ripley then created a photographic lineup of six individuals, with the plaintiff placed in position number 2. (App. 128a; App. D1a[1]) Detective Ripley selected the photographs for the lineup from the Pennsylvania Department of Transportation database, selecting individuals who resembled the plaintiff, but he did not select any of the photographs based on the background color. (App. 129a-130a) The plaintiff has alleged that the photo array was fatally defective because the background of Vega's picture was the lightest shade of blue and because he was the only person depicted with facial hair. However, there was nothing overly suggestive about the photo array because the difference in the background was marginal and insignificant. (App. D1a) Further, not only was the plaintiff's facial hair very light, but also none of the witnesses indicated facial hair as any type of

---

[1] Contemporaneously with this brief, the Defendants are filing a supplemental appendix containing a clear, color copy of the photo array for this Court's use.

identifying feature and, moreover, one other of the photos, in position 5, depicted a man with facial hair. (App. 5a)[2]

Detective Ripley was required to hand select photographs of individuals for the array because there were no pictures available in the electronic, C-PIN database to create an array. (App. 143a-144a) Detective Ripley presented this lineup to Mr. Collier on October 7, 2009. (App. 128a; App. 168a) Although Detective Ripley speculated that Mr. Collier was being given pain medication, Collier was awake and alert, but spoke in a low, whispered voice. (App. 132a)

Because Mr. Collier was paralyzed from the neck down, Detective Ripley had to hold the photo array in front of Mr. Collier and instructed him that he was to examine the photographs and to give the number of the individual if he any of the individuals pictured was the shooter. (App. 133a) Mr. Collier was specifically told that the shooter may or may not be included in the photographs. (Id.) After confirming that he understood the instructions, Collier examined the lineup, stared at photograph two, then mouthed and said "two" in a low voice. (App. 133a-134a) Detective Ripley asked Collier if he identified the person in position number two, and Collier affirmed that he did. (Id) Collier was then asked if he knew the man depicted in the photograph and Collier asserted that he did. (App. 134a)

---

[2] Inexplicably, in Magistrate Judge Carlson's Report and Recommendation, he accepted the plaintiff's incorrect assertion that Vega was the only one depicted with facial hair.

After receiving the identification from Collier, Detective Ripley did not immediately seek an arrest warrant, but desired to interview Vega in order to get his side of the story. He further wished to gather information from independent sources. (App. 136a)

On December 7, 2009, Detective Ripley heard the plaintiff's name mentioned in a call being dispatched, as Vega was suspected of threatening his sister with a gun. (App. 136a-137a) When Vega was brought to the station, Detective Ripley interviewed him and the plaintiff denied having any involvement in the Collier shooting or knowing anyone involved. (App. 338a-368a)

The plaintiff confirmed that Detective Ripley was not rude to him during this interview and did not mistreat him in any way.  (App. 300a-301a) He further stated that he does not believe that Detective Ripley knowingly accused him of a crime that he didn't commit, but believes that Detective Ripley was just acting on the information presented to him by Penny Marco. (App. 301a-303a) Moreover, the plaintiff testified that he has no reason to believe that Detective Ripley knew that any of the information provided by Penny Marco was false. (Id.)

As a consequence of the photo identification by Collier, the plaintiff was charged with aggravated assault and carrying a firearm without a license. (App. 48a-54a)

During Detective Ripley's investigation of another homicide, he learned that a man named Rashaan Greer was dating one of the women involved in the dispute leading up to the Collier shooting, which led Detective Ripley to investigate whether Mr. Greer was responsible for shooting Clarence Collier. (App. 138a; 109a)

He immediately prepared a photo array including the photo of Mr. Greer to present to Mr. Collier. (App. 138a-139a) Detective Ripley presented the new photo array to Mr. Collier in June of 2010. (App. 139a) Collier identified Rashaan Greer from the photo array and stated that both Greer and the plaintiff were present at the time of the shooting. (App. 139a) Mr. Collier stated that he did not see who shot him, but that he saw Mr. Greer reach down and motion upward, and, as he turned towards the door of his apartment, he heard gunshots. (Id.)

After speaking to Mr. Collier, Detective Ripley interviewed Maribel Baez. (App. 139a-140a) Although Ms. Baez was not able to identify any of the individuals presented in the previous lineup, when presented the photo lineup with Rashaan Greer, she immediately identified Mr. Greer as the shooter. (App. 140a-142a) She further confirmed that she was familiar with Mr. Greer, even prior to seeing him in the lineup, and knew who he was. (Id.)

After receiving the identification of Mr. Greer, Detective Ripley immediately prepared a form to withdraw the charges against Mr. Vega. (App.

140a) On June 30, 2010, Rashaan Greer was arrested and charged with the shooting of Clarence Collier on June 30 2010. (App. 174a)

The plaintiff then filed his complaint. (App. 40a-55a) After discovery and the defendant's motion for summary judgment was granted, this appeal followed.

## V.    SUMMARY OF THE ARGUMENT

The motion for summary judgment was properly granted under the doctrine of qualified immunity. Qualified immunity applies to bar litigation of a claim against a state actor where either the plaintiff cannot establish a constitutional or statutory violation or where such a violation was not sufficiently well established.

In this case alleging wrongful prosecution, after a shooting in York, Pennsylvania, the plaintiff was named by an informant as having bragged about committing the shooting, with the informant providing other accurate information about the plaintiff. As a consequence, the defendant, a York City Police Detective, created a photo array which included the plaintiff's picture. The shooting victim positively identified the plaintiff out of the photo array and stated that he knew the plaintiff.

The plaintiff was unable to establish a cause of action for malicious prosecution because the plaintiff could not establish that the defendant brought the prosecution against the plaintiff, acted to arrest him without probable cause and because he could not establish malice.

There is nothing in the record to support a conclusion that the defendant told the prosecutor any false information or acted in any way improperly; the positive identification by the victim established probable cause and there was no evidence on the record to establish that the defendant acted with any degree of malice.

Further, the plaintiff's claim that the photo array was "illegal" is not supported by the facts as the differences between the plaintiff's picture and the others were minor, at best and were insufficient to support a conclusion that the witness was improperly persuaded to choose the plaintiff or that the process was unduly suggestive. Further, there was no material information omitted from the affidavit of probable cause.

As such, the grant of summary judgment in this case was wholly proper and this Court is requested to affirm that decision.

VI.    ARGUMENT

A.    *QUALIFIED IMMUNITY BARS THE PLAINTIFF'S CLAIM.*

Qualified immunity shields public officials performing discretionary functions from § 1983 liability "insofar as their conduct does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Reasonableness" is measured by an objective standard. Thus, an officer is entitled to qualified

immunity if his conduct was in accordance with clearly established law. <u>Anderson v. Creighton</u>, 483 U.S. 635 (1987).

> Government officials exercising discretionary functions have qualified immunity from suits seeking damages under [42 U.S.C.] § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 73 L.Ed. 2d 396, 102 S. Ct. 2727 (1982); see also <u>Wilson v. Russo</u>, 212 F.3d 781, 786 (3d Cir. 2000) ("According to the doctrine of qualified immunity, law enforcement officers acting within their professional capacity are generally immune from trial insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.")

<u>Donahue v. Gavin</u>, 80 F.3d 371, 377 (3d Cir. 2002). If the law does not put the officer on notice that his actions would be clearly unlawful, qualified immunity must be granted. <u>Saucier v. Katz</u>, 533 U.S. 191, 202 (2001). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).

In <u>Hunter v. Bryant</u>, 502 U.S. 224 (1991), the Supreme Court recognized that a "qualified immunity standard gives ample room for mistakes of judgment and protects all but the plainly incompetent or those who knowingly violate the law". This accommodation for reasonable error exists because officials "should not err always on the side of caution because they fear being sued." <u>Id</u>. at 229.

As the Supreme Court pointed out in <u>Saucier</u>:

12

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If an officer's mistake as to what the law requires is reasonable, however, the officer is entitled to immunity defense.

Saucier, 533 U.S. 194, 205.

"Qualified immunity protects government officials, in their individual capacities, from suit unless the law preexisting the defendant official's supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances." Pace v. Capobianco, 283 F.3d 1275 (11th Cir. 2002)(citing Lassiter v. Alabama A&M Univ., 28 F.3d 1146, 1149-1150 (11th Cir.1994)(en banc)). "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Lassiter, 28 F.3d at 1149.

The Supreme Court in Saucier held that, in evaluating claims of excessive force, a two-step analysis is appropriate:

> [T]he first inquiry must be whether a constitutional right
> would have been violated on the facts alleged; second,
> assuming the violation is established, the question
> whether the right was clearly established must be
> considered on a more specific level than recognized by
> the Court of Appeals.

Id., at 200. Thus, a court presented with a claim of qualified immunity must

examine both the law that was clearly established at the time of the alleged

violation and the facts available to the official at that time, and then determine

whether a reasonable official would believe that his conduct was lawful. Good v.

Dauphin County Social Services for Children and Youths, 891 F.2d 1087, 1092 (3d

Cir. 1989).

    In this case, Detective Ripley was properly granted qualified immunity

because the first step of the qualified immunity analysis — which asks whether a

constitutional right has been violated — could not be met by the plaintiff because

viewing the evidence in the light most favorable to him, he cannot establish a

prima facie case of malicious prosecution.

### 1) The Plaintiff Cannot Demonstrate Malicious Prosecution

    In order to make out a claim of malicious prosecution, a plaintiff must show

that (1) the defendant initiated a criminal proceeding against the plaintiff; (2) the

criminal proceeding ended in plaintiff's favor; (3) the defendant initiated the

proceeding without probable cause; (4) the defendant acted maliciously or for a

14

purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. McKenna v. City of Phila., 582 F.3d 447, 461 (3d Cir. 2009); Johnson v. Knoor, 477 F.3d 75, 81-82 (3d Cir. 2007).

As properly found in Magistrate Judge Carlson's Report and Recommendation, the plaintiff cannot establish a viable cause of action for malicious prosecution claim. The plaintiff failed to demonstrate that Detective Ripley initiated a criminal proceeding against the plaintiff; that Detective Ripley did not have probable cause to arrest the plaintiff; and that Detective Ripley acted maliciously toward the plaintiff.

Because there was no error in that decision, this Court is respectfully requested to affirm it.

### 2) The Plaintiff Cannot Establish That Detective Ripley Initiated Criminal Proceedings

Generally, a plaintiff cannot institute a malicious prosecution action against a police officer because a prosecutor, not a police officer, initiates criminal proceedings against an individual.  Henderson v. City of Philadelphia, 853 F.Supp.2d 514, 518 (E.D.Pa. 2012); Reed v. City of Chicago, 77 F.3d 1049, 1053-54 (7th Cir. 1996). However, a police officer may be found to fulfill this prong where the police officer knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion.

15

In this case, there is no evidence that Detective Ripley knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's independent evaluation of the charges filed against the plaintiff. The decision to arrest Mr. Vega was made after a informant indicated that she was told by her teenage children that Mr. Vega was boasting about the shooting and conveyed some information about him that was accurate, and after the victim of the shooting positively identified him in a photo array.

Further, the plaintiff has identified no information which he believes or even suspects was false and, in fact, asserted that he does not have any reason to believe that Detective Ripley knew that any of the facts he was relying upon was false.

As such, the first element could not be established against Detective Ripley.

### 3) The Plaintiff Could Not Establish An Absence of Probable Cause To Arrest Him.

The plaintiff could not establish that the plaintiff was arrested in the absence of probable cause.  This Court has noted that the lack of probable cause is "a sine qua non of malicious prosecution." Trabal v. Wells Fargo, 269 F.3d 243, 249 (3d Cir. 2001). In an action for malicious prosecution, the plaintiff has the burden of proving that the defendant lacked probable cause at the time he sought to arrest the plaintiff. Camiolo v. State Farm, 334 F.3d 345, 363 (3d Cir. 2003); Trabal, 269 F.3d at 249.

The standard for analyzing cases of probable cause to arrest require an examination to determine if "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995). See, also, Beck v. Ohio, 379 U.S. 89, 91 (1964); accord, Wilson, 212 F.3d at 789; United States v. Cruz, 910 F.2d 1072, 1076 (3d Cir. 1990)(probable cause for arrest exists when facts and circumstances within officer's knowledge are sufficient to warrant a reasonable person to believe an offense has been committed).

Probable cause is a relatively "low standard" for a defendant to meet. Wychunas v. O'Toole, 252 F.Supp.2d 135, 142 (M.D. Pa. 2003). Because "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction,... the evidentiary standard for probable cause is significantly lower than the standard which is required for conviction." Wright v. City of Phila., 409 F.3d 595, 602 (3d Cir. 2005)(internal quotations and citations omitted).

Further, although "[p]robable cause to arrest requires more than mere suspicion... it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." Orsatti, 71 F.3d at 482-83. When an arrest is made on more than one charge, "[p]robable cause need only exist as to any offense

that could be charged under the circumstances." <u>Barna v. City of Perth Amboy</u>, 42

F.3d 809, 819 (3d Cir. 1994). Further, "[t]he test for an arrest without probable

cause is an objective one" <u>Id</u>., (citation omitted). "In assessing probable cause,

police officers are permitted to weigh evidence and make credibility

determinations, even if those decisions later prove incorrect." <u>Wright</u>, 409 F.3d at

603.

Police officers are permitted to rely upon the statements of eyewitnesses or

victims if they reasonably believe the statements are  credible. <u>Wilson</u>, 212 F.2d at

790. Further, this Court and courts in this circuit have already established that a

report by the victim, by itself, can be sufficient to establish probable cause. <u>See</u>,

<u>Merkle v. Upper Dublin</u>, 211 F.3d 782, 790 (3d Cir. 2000)(finding that officer had

probable cause to arrest a teacher for theft by taking based on a credible report

from the school principal who witnessed the alleged crime); <u>also see</u>, <u>Mitchell v.</u>

<u>Obenski</u>, 134 Fed. Appx. 548, 551 (3d Cir. 2005)(officer had probable cause to

arrest a suspect for sexual assault based on the victim's credible account of the

sexual assault which was supported by hotel records); <u>Pardue v. Gray</u>, 136 Fed.

Appx. 529, 533 (3d Cir. 2005)(officer had probable cause to arrest a suspect on

charges of harassment and stalking based on the victim's credible report of being

stalked and harassed); <u>Feldman v. Cmty. College of Allegheny</u>, 85 Fed. Appx. 821,

825 (3d Cir. 2004)(officer had probable cause to arrest a suspect for engaging in

defiant trespass based on the statement of a security guard that he instructed the suspect to leave the premises but he refused to leave.)

Indeed, where the police officer possesses "knowledge of a credible eyewitness... a reasonable jury could not find that [he] lacked knowledge of sufficient facts to establish probable cause to arrest." <u>Merkle</u>, 211 F.3d at 790. Quite simply, courts have repeatedly held that reliance on a photo line-up identification of an alleged perpetrator by a victim or eyewitness provides police with probable cause. <u>See, e.g.</u>, <u>Phillips v. Allen</u>, 668 F.3d 912, 916 (7th Cir. 2012); <u>Atterbury v. City of Miami Police Dep't.</u>, 322 F. Appx. 724, 725 (11th Cir. 2005).

Finally, a police officer is "not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed..." <u>Merkle</u>, 211 F.3d at 790 n.8.

At the time of the plaintiff's arrest, Detective Ripley, with the assistance of other members of the York City Police Department, had conducted a through investigation of the shooting of Clarence Collier. Once Detective Ripley received information from two reliable sources that Plaintiff was responsible for shooting Mr. Collier, he first verified that the background information provided by the sources on Luis Vega was correct, and then created a photo array which included the photograph of Luis Vega. Detective Ripley then presented this photo lineup to the victim, Clarence Collier who identified Mr. Vega as the shooter. Once Clarence

Collier identified the plaintiff as the perpetrator of the crime, Detective Ripley

possessed sufficient probable cause for the plaintiff's arrest. There was no

indication that Mr. Collier was not being truthful in his identification of the

perpetrator, or that Detective Ripley had any reason to believe Collier was

being anything less than completely honest.

Further, although the plaintiff denied his involvement in the shooting

incident during his interview with Detective Ripley, his denials did not negate the

probable cause established by Mr. Collier's identification. The law recognizes that

there is no inconsistency between having probable cause to charge a party with a

crime and that party having a defense to the charge. See, e.g., Moscoso v. City of

New York, 92 F. Supp. 2d 310, 314 (S.D.N.Y. 2000)(holding that an officer is

under no duty, once probable cause is found to exist, to credit the plaintiff's

protestations of self-defense). The fact that a defendant claims a defense to the

criminal charge does not obligate the officer to eliminate the application of that

defense prior to arrest. See, Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir.

2001)("once a police officer has a reasonable basis for believing there is probable

cause, he is not required to explore and eliminate every theoretically plausible

claim of innocence before making an arrest.")

Further, claims of innocence and having arrested the wrong person are not

uncommon, but they do not create a higher burden on the defendant. "[A]n

20

arresting officer does not, of course, have to accept at face value an arrestee's claim of innocence or mistaken identity." Garcia v. County of Bucks, 155 F. Supp.2d 259, 266 (E.D. Pa. 2001). As it turned out, Detective Ripley continued to investigate and ultimately uncovered the evidence that freed the plaintiff.

Thus, the components of the probable case analysis are met under these circumstances. These facts – especially the identification of Mr. Vega by Mr. Collier - are sufficient for a reasonably prudent person to suspect that plaintiff had committed the crimes alleged and Detective Ripley reasonably believed that the plaintiff committed the shooting. Therefore, probable cause existed for the plaintiff's arrest.

### 4) The Plaintiff Could Not Demonstrate That Detective Ripley Acted Maliciously In The Handling Of The Investigation

Next, the dismissal of the plaintiff's complaint was proper because the plaintiff could not demonstrate that Detective Ripley acted with malice in the handling of the investigation of the Collier shooting. "Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1988), overruled on other grounds, Albright v. Oliver, 510 U.S. 266 (1994). In this case, the plaintiff failed to produce any evidence that Detective Ripley acted out of spite,

did not believe in the propriety of the prosecution or had any improper purpose. In fact, in his deposition, the plaintiff testified that he believed that Detective Ripley was acting on the information he received, not out of an improper motive.

> Q.    Okay, but so because Penny Marco is involved, why would Detective Ripley then falsely accuse you of a crime? Like what's the connection? I'm missing it.
>
> A.    He probably doesn't know the situation, but -- he's probably just going on what she's saying. That's what I think. I think that they're just going their whole case according to what she said to them.
>
> Q.    Okay, but do you have any reason to believe that Detective Ripley knew that that was false and not true?
>
> A.    Yes.
>
> Q.    Okay, what evidence do you have for that?
>
> A.    I have no evidence to that. The only -- the only reason I think that is because, like I said, Penny Marco.

(App. 302a-303a) Plaintiff's conclusory allegations that the informant, Penny Marco, acted improperly is far short of sufficient evidence to establish that Detective Ripley had any malice against Plaintiff to support a claim of malicious prosecution.

The plaintiff argued in his brief to this Court that the malice element could be shown by the supposed lack of probable cause to arrest. However, as the

previous section of this brief demonstrated, the plaintiff arrest was well supported by probable cause and, therefore, malice can not be inferred.

Therefore, Plaintiff can not establish that Detective Ripley acted with malice in investigating the shooting of Clarence Collier. Consequently, because the plaintiff cannot establish a cause of action for malicious prosecution, and because there was probable cause to arrest the plaintiff, Detective Ripley is entitled to qualified immunity and the plaintiff's claims were properly dismissed.

### *5) The Plaintiff Has Not Establish That There Was Anything Erroneous In The Manner The Photographic Array Was Presented.*

In the plaintiff's brief, he repeatedly asserts that he was he was arrested as a result of an illegal photographic lineup, because the background of his photograph was a lighter version of blue than the other photographs and also because, he asserts, he was the only person depicted who had facial hair. There is simply no merit to this claim.

It is important to note that the plaintiff was not present when the photo array was presented to Mr. Collier and has no evidence to support any allegations that Detective Ripley emphasized the photograph of Mr. Vega over the other photographs.

Further, under the well-established law concerning the use of photographic arrays, there was no violation in the manner the photo array was presented. Due

process rights generally are violated in the case of identification procedures if the

identification process was "unnecessarily suggestive" and where they created a

"substantial risk of misidentification." United States v. Emanuele, 51 F.3d 1123,

1128 (3d Cir. 1995). The "suggestiveness" of a particular array depends on the size

of the array, the manner of its presentation, and its contents. Greene v. City of

Philadelphia, 1998 U.S.Dist. LEXIS 6594 at *4 (E.D.Pa. 1998).

The plaintiff first suggests that the array is "illegal" because the background

of the plaintiff's photograph is the lightest shade of blue among all of the photos

depicted.

However, Detective Ripley testified that in creating the array he selected

pictures from the Pennsylvania Department of Transportation and the only criteria

he used to select those photographs was whether the individuals had similar facial

characteristics to Mr. Vega. Moreover, there is no evidence that the lighter

background of the plaintiff's picture influenced Mr. Collier to select him from the

array.

Moreover, case law has already held that there is no requirement that the

photographs in the original be identical in such matters. It is not required, however,

that all of the photographs in the array be uniform with respect to a given

characteristic. Jarrett v. Headley, 802 F.2d 34 (2d Cir. 1986). Further, the type of

difference in background color presented by the photo array here is not substantial

enough to constitute a violation.  United States v. Lawrence, 349 F.3d 109, 115 (3d Cir. 2003)(difference in background color, shading and angle where photo of the plaintiff was the only photo in the photo array which was not a mug shot was not unnecessarily suggestive); United States v. Brudeau, 168 F.3d 352, 357 (9th Cir. 1999)(darker hue in defendant's photograph was an insubstantial difference); United States v. Bautista, 23 F.3d 726, 731 (2d Cir. 1994)(slightly brighter and slightly more close-up photograph not unnecessarily suggestive.)

Therefore, the gradation in the background color and the fact that the plaintiff's picture's background was the lightest photo did not, in any way, vitiate the validity of the identification of him by Mr. Collier as the man responsible for the shooting.

Further, the plaintiff also claims that the array was "illegal" because the plaintiff believes he was the only one depicted with facial hair. (Plaintiff's brief at 10) First, this argument is factually wrong. The plaintiff's picture depicts him wearing a light mustache and a small, light patch of hair on his chin. However, photograph number 5 also depicts a man with facial hair, as he wears a mustache. (App. D1a)

The law does not require an exact identity of such facial features, although it will be found to be improper to limit such features where they were prominent in the identification information a witness or witnesses gave. Matasavage v. Corby,

2000 U.S. Dist. LEXIS 20207 (M.D. Pa. October 16, 2006)(the issue of whether the photo array depicted the plaintiff as unshaven was only significant because the witness described the suspect as clean shaven and the remaining photographs depicted individuals with facial hair.)

Here, no witness identified the suspect on the basis of the appearance of facial hair and, therefore, the photo array was not improper or unnecessarily suggestive on this basis. There is no evidence that this slight difference in Mr. Vega's appearance was in any way significant and material in Mr. Collier's identification, and, in any event, the plaintiff's facial hair is rather sparse and not particularly prominent in any respect. Therefore, its presence cannot be said to have had the potential to have been unnaturally suggestive.

As such, the claim that the photo array was erroneous is without merit.

### 6) The Plaintiff Failed To Demonstrate Any Material Information Was Omitted From The Probable Cause Affidavit.

The plaintiff further argues that probable cause did not exist, alleging that Detective Ripley omitted material, exculpatory facts from his affidavit of probable cause. There is simply no basis for that assertion.

In his brief, the plaintiff claims that the affidavit was defective because the following were omitted: (1) the circumstances surrounding the presentation of the initial photo array to Collier; (2) information as to how Mr. Vega became

identified as the shooter; (3) the fact that Ms. Baez was never shown the first photo array although she told Detective Ripley she could identify the shooter; and (4) that two witnesses described the shooter as a black male, while Detective Ripley knew the plaintiff to be Hispanic.

In order to successfully assert a claim stemming from the omission of material exculpatory facts, the plaintiff must establish that: "(1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." Wilson, 212 F.3d at 787, (quotations omitted). An officer is not required to include every detail of events leading up to the warrant application. Id. Rather, the omitted information must be of a highly relevant nature for the omission to occur with reckless disregard upon the affidavit. Id. at 788 (quoting United States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir. 1993)). Here, none of the allegedly omitted information was highly relevant to probable cause in this matter.

First, the plaintiff argues that the affidavit of probable cause failed to that Clarence Collier was "in a medically induced and injury caused disoriented, at the very least, if not incapacitating mental state" and an "apparent state of post-shooting understandable observational diminishment." (Plaintiff's brief at 20.)

There is simply no evidence of record at all that the witness was, in fact, heavily medicated or had any diminished observational capacity when the photo array was presented to him, approximately eight days after the shooting. While Detective Ripley testified that he assumed that Mr. Collier was on some pain medication, he did not inquire into the fact and did not examine Collier's medical chart. So there is no evidence of record that Collier was medicated, let alone heavily medicated.

Further, Detective Ripley testified that Collier was awake and alert when he identified the plaintiff, and there is nothing in record demonstrating that it was unreasonable for Detective Ripley to rely on Collier's identification or which required him to discount the identification.

This Court has also emphasized that officers are entitled to assess the demeanor of witnesses in making determinations regarding probable cause. See, Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997)(finding officer's assessment of the victim's demeanor and the credibility of her story in identifying her attacker.)

Therefore, the fact that Mr. Collier may have been taking pain medication at the time of the first photo array is irrelevant to the question of whether he could provide clear, reliable identification. In the absence of any evidence which might

demonstrate a reason to believe it affected that identification, the omission of any discussion on this point is irrelevant.

Also, Mr. Collier's physical limitations of not being able to hold the paper in his hands or speak above a whisper have no bearing on whether or not he was able to review a photo array and determine whether any of the individuals pictured were the person who shot him. In fact, Collier's inability to hold the photo array was referenced in the affidavit, as it noted his paralysis. "[Collier] was admitted to York Hospital for a gunshot wound and is paralyzed from the neck down." (App. 374a) Moreover, the record reflects that he was able to make a clear, reliable identification of the plaintiff, in spite of these limitations, and that he clearly and knowingly identified the plaintiff.

Therefore, this information was not material to the issue of probable cause and did not need to be included in Detective Ripley's affidavit.

Next, the plaintiff's argument concerning the lack of detail in the affidavit about Ms. Wright information is irrelevant to the issue of whether probable cause existed and its absence does not vitiate the validity of the affidavit of probable cause. Detective Ripley was not required to include such detailed information regarding Ms. Wright's credibility or veracity as Detective Ripley was not attempting to rely solely on the information she provided to secure the arrest of the plaintiff. In <u>Matasavage</u>, the Court noted, "[i]f Defendant based his arrest solely

upon the anonymous informants, Defendant would not have probable cause. However, in this case, once Burnside identified Plaintiff from the photo array, probable cause existed for his arrest." Id., at *20.

Similarly, here, Detective Ripley did not use the information provided by Ms. Wright to establish probable cause. Rather, after he received it and confirmed that the other information concerning the plaintiff's car, his sister's residence and his previous residence were correct, he further investigated the matter by proceeding to present Mr. Collier with the photo array. It was once he obtained Collier's identification that Detective Ripley possessed the necessary probable cause for the plaintiffs arrest.

It follows then, that information regarding the reliability of Ms. Wright's information was not necessary in the affidavit of probable cause as probable cause was derived from Mr. Collier's identification.

Next, the plaintiffs argument that Plaintiffs argument regarding Detective Ripley's alleged failure to show the first photo array to Maribel Baez is flawed, both factually and legally. As a factual matter, Detective Ripley did show the first photo array, which included the picture of Mr. Vega, to Ms. Baez. (App. 141a-144a) However, Ms. Baez was unable to identify anyone in the array as the shooter. (App. 144a-145a)

Nevertheless, her inability to identify the plaintiff in the photo array did not negate the probable cause established by Mr. Collier's identification of the plaintiff as the man who shot him. "Evidence that might exonerate a defendant does not defeat probable cause." Merkle, 211 F.3d 790, n8.  Thus, the fact that it is not in the affidavit is of no moment.

Next, the plaintiff argues that the fact that the shell casings recovered from the scene were not compatible with the two guns registered to him was somehow exculpatory and should have been included in Detective Ripley's affidavit of probable cause. Those facts were in no way exculpatory, because the fact that the shell casings did not match the guns which were registered to the plaintiff simply meant that those guns were no used in the shooting. They did not foreclose the possibility that the plaintiff shot Mr. Collier with another firearm which was not registered; thus the information was not exculpatory and relevant.  United States v. Starusko, 729 F.2d 256, 260 (3d Cir. 1984)(noting that exculpatory evidence is "evidence favorable to the accused... where the evidence is material...")  Here, the evidence of the plaintiff other registered hand guns is not material, because nothing in charges against him made those two guns in any way relevant to the commission of the offenses. Therefore, this information was not exculpatory and did not cast doubt upon the probable cause established by Mr. Collier's identification. As such, it was not required in the affidavit of probable cause.

Next, Mr. Vega contends that "contrary to the affidavit, Collier did not know

who shot him" and that this should have been presented in the affidavit.  However,

this position is belied by the record and contradicted by the evidence in the case.

During his deposition, Detective Ripley testified that after presenting the photo

array to Mr. Collier, that he asked if he knew Mr. Vega, and Collier stated that he

did. (App. 55a) There is nothing in the record to the contrary. Therefore, this

information was not a matter which was required to be addressed in the affidavit as

it was not supported by the record.

Finally, the fact the plaintiff is a light-skinned Hispanic man, while two

other witnesses asserted their belief that the shooter was a light-skinned black man

was not an exculpatory fact which was necessary to disclose in the probable cause

affidavit, especially in light of Mr. Collier's positive identification of Mr. Vega.[3]

Both of the witnesses confirmed that the shooter was wearing a hoodie with

the hood covering his head and all stated that the shooter was light-skinned, so the

description of the apparent ethnicity of the shooter is not the "kind of thing the

Judge would wish to know" given the often difficulty that determinations of

ethnicity can pose. Wilson v. Russo, 212 F.3d 781, 788 (3d 2000)("[W]e do not

believe that an officer can be expected to communicate the apparent ethnicity of

---

[3] Indeed, yet another witness, Mr. Flores, identified the shooter as being
light-skinned and bi-racial.

the victim, or slight variations in appearance on the photographic line-up absent

circumstances making these factors more important or prejudicial.")

Finally, even if the materials which the plaintiff believes should have been

included were considered "omissions and assertions made knowingly, or with

reckless disregard for the truth," there still would have been no error, because none

of these omissions are material.[4]

> To determine the materiality of the misstatements and
> omissions, we excise the offending inaccuracies and
> insert the facts recklessly omitted, and then determine
> whether or not the "corrected" warrant affidavit would
> establish probable cause. If it does, the grant of summary
> judgment should be affirmed, for even if there had not
> been omissions and misrepresentations in [the affidavit,
> the criminal defendant] would have been arrested.

Wilson, at 789. Here, even considering the additional information in this

investigation were included in the affidavit, probable cause to arrest would still

exist, as Mr. Collier identified the plaintiff as being the party who shot him.  That

identification is sufficient for a reasonably competent police officer to conclude

that there is a fair probability that Mr. Vega committed the crime at issue.  As such,

summary judgment was proper.

---

[4] Obviously, this would not include any of the plaintiff's assertions which
are wholly devoid of evidentiary support on the record.

## VII.   CONCLUSION

Thus, because Judge Conner's order granting summary judgment was

proper, this Court is respectfully requested to affirm that order.

Respectfully Submitted,

**Marshall, Dennehey, Warner,
Coleman & Goggin**

/s/ Walter F. Kawalec, III
Walter F. Kawalec, III, Esquire
*Attorney for Appellee,*
*Detective George Ripley*

## VIII. CERTIFICATION OF BAR MEMBERSHIP

The undersigned hereby certifies that, pursuant to 3rd Circuit Local Appellate Rule 46.1(e), Walter F. Kawalec, III, Esquire, is a member of the bar of this Honorable Court, in good standing in all jurisdictions in which he is admitted to practice, and that there are no disciplinary proceedings pending against him in any jurisdiction.

**MARSHALL, DENNEHEY, WARNER COLEMAN, & GOGGIN**

BY: /s/ Walter F. Kawalec, III
Walter F. Kawalec, III, Esquire
*Attorney for Appellee,*
*Detective George Ripley*

DATED:    February 21, 2014

## IX.    CERTIFICATE OF COMPLIANCE  WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, TYPE STYLE, AND ELECTRONIC FILING REQUIREMENTS

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32 (a)(7)(B) because:

- this brief contains 7,554 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(6) because:

- this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

3.    This brief complies with the requirements of Third Circuit LAR 31(b) & (c)  because:

- it has been checked with virus-checking software, viz., McAfee, and the e-brief and hard copy served on counsel are identical.

- the electronic copy of this brief is identical to the hard copies of this brief.

**MARSHALL, DENNEHEY, WARNER COLEMAN, & GOGGIN**

BY: /s/ Walter F. Kawalec, III
Walter F. Kawalec, III, Esquire
*Attorney for Appellee,*
*Detective George Ripley*

DATED:    February 21, 2014

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Brief for Appellee, was,

on the date listed below, served upon the parties listed below, in the manner

indicated:

By E-filing and first class mail, postage prepaid, to the following addresses:

Matthew B. Weisberg, Esq.
Weisberg Law
7 South Morton Avenue
Morton, PA 19070

MARSHALL, DENNEHEY, WARNER
COLEMAN, & GOGGIN

BY: /s/ Walter F. Kawalec, III
Walter F. Kawalec, III, Esquire
*Attorney for Appellee,*
*Detective George Ripley*

DATED:    February 21, 2014